ERIKA D. OINHEIRO (SBN 275711)
erika@alotrolado.org
**AL OTRO LADO, INC.**
511 San Ysidro Blvd. #333
San Ysidro, California  92173
Telephone: 619.254.1261
Facsimile:  323.430.8793

JOHN S. PURCELL (SBN 158969)
john.purcell@arentfox.com
TRACY LUU-VARNES (SBN 281165)
tracy.luu-varnes@arentfox.com
STEVEN SUNG SOO YOON (SBN 328203)
steven.yoon@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: 213.629.7400
Facsimile:  213.629.7401

Attorneys for Petitioners
Marta Carolina Barrientos Calel, J.V.C.B. and
A.S.D.J.Y.B.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTA CAROLINA BARRIENTOS CALEL, an individual, J.V.C.B., a minor and A.S.D.J.Y.B., a minor, | Case No. '20CV0443 LAB AHG |
| Petitioners, | **VERIFIED EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| WILLIAM P. BARR, Attorney General of the United States; GREG ARCHAMBEAULT, Field Office Director, San Diego Field Office, U.S. Immigration and Customs Enforcement; CHAD F. WOLF, Acting Secretary of the U.S. Department of Homeland Security; MATTHEW T. ALBENCE, Acting Director of Immigration and Customs Enforcement; RODNEY S. SCOTT, Chief Patrol Agent, for the Imperial Beach Border Patrol Station, | |
| Respondents. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

JURISDICTION ................................................................................................... 2

VENUE ................................................................................................................ 3

PARTIES ............................................................................................................. 4

FACTS ................................................................................................................. 5

    Petitioners' Experience .............................................................................. 5

THE FLORES SETTLEMENT AGREEMENT ................................................. 9

THE MIGRANT PROTECTION PROGRAM ................................................. 12

THE NON-REFOULEMENT PROCESS ........................................................ 14

THE CONVENTION AGAINST TORTURE AND OTHER CRUEL, INHUMAN OR DEGRADING TREATMENT OR PUNISHMENT (CAT) ........................................................................................................... 15

HABEAS AUTHORITY & EXHAUSTION .................................................... 17

    CLAIMS FOR RELIEF ............................................................................ 20

        COUNT ONE ...................................................................... 20

        COUNT TWO ...................................................................... 23

        COUNT THREE .................................................................. 24

        COUNT FOUR .................................................................... 25

        COUNT FIVE ...................................................................... 27

        COUNT SIX ........................................................................ 28

        COUNT SEVEN .................................................................. 28

        COUNT EIGHT ................................................................... 29

PRAYER FOR RELIEF .................................................................................... 29

## <u>Table of Authorities</u>

**Cases**                                                                                   **Page(s)**

*Am. Civil Liberties Union v. Clapper*,
804 F.3d 617 (2d Cir. 2015) ................................................................. 20

*Block v. Cmty. Nutrition Inst.*,
467 U.S. 340 (1984) .......................................................................... 17

*Matter of C--*,
20 I&N Dec. 529 (BIA 1992) ................................................................. 19

*Carafas v. LaVallee*,
391 U.S. 234 (1968) .......................................................................... 18

*Casas-Castrillon v. Dep't of Homeland Security*,
535 F.3d 942 (9th Cir. 2008) ................................................................. 20

*Elgin v. U.S. Dep't of Treasury*,
567 U.S. 1 (2012) ............................................................................ 17

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938) ........................................................................... 19

*Flores v. Lynch*,
828 F.3d 898 (9th Cir. 2016) ................................................................. 10

*Flores v. Reno*,
Case No. CV 85-4544-RJK(Px) ......................................................... *passim*

*Flores v. Sessions*,
862 F.3d 863 (9th Cir. 2017) ........................................................... *passim*

*Harris v. Nelson*,
394 U.S. 286 (1969) .......................................................................... 17

*I.N.S. v. Cardoza-Fonseca*,
480 U.S. 421 (1987) .......................................................................... 14

*Mach Mining, LLC v. EEOC*,
575 U.S. 480 (2015) .......................................................................... 17

*McCarthy v. Madigan*,
503 U.S. 140 (1992) .......................................................................... 20

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978) .......................................................................... 18

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)..................................................................................27, 28

*Padilla v. US Immigration & Customs Enf't*,
No. 18-cv-928, 2019 WL 1506754 (W.D. Wash. Apr. 5, 2019)............................26

*Preiser v. Rodriguez*,
411 U.S. 475 (1973)..................................................................................18

*R.I.L.-R. v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015)................................................................26

*Spencer v. Kemna*,
523 U.S. 1 (1998)..............................................................................18, 20

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981)..................................................................................19

*Tijani v. Willis*,
430 F.3d 1241 (9th Cir. 2005) (Tashima, J., concurring).......................................26

*Wallach v. Eaton Corp.*,
837 F.3d 356 (3d Cir. 2016) ......................................................................19

**Statutes**

28 U.S.C.A. § 2254...............................................................................18, 20

5 U.S.C. § 504.........................................................................................29

5 U.S.C. § 551.........................................................................................28

5 U.S.C. § 701.........................................................................................28

5 U.S.C. § 702....................................................................................3, 28

5 U.S.C. § 706..........................................................................................3

8 U.S.C. §§ 1101(a)(42)(A), 1158................................................................12

8 U.S.C. § 1225 (b)(1)..........................................................................12, 16

8 U.S.C. § 1225(b)(1)(A)(i).........................................................................12

8 U.S.C. § 1225(b)(1)(A)(iii).......................................................................16

8 U.S.C. § 1225(b)(1)(B)(ii).......................................................................17

8 U.S.C. § 1225(b)(1)(B)(iii)(III)..................................................................17

8 U.S.C. § 1225(b)(2)(C).............................................................................13

8 U.S.C. § 1226.......................................................................................23

8 U.S.C. § 1228(b), 1231(a)(5) .................................................................... 16

8 U.S.C. § 1229a ............................................................................................ 17

8 U.S.C. §1231(a)(5) ..................................................................................... 16

8 U.S.C. § 1231(b)(3) ............................................................................. 15, 23

28 U.S.C. § 1331 ......................................................................................... 2, 19

28 U.S.C. § 1346(a)(2) ..................................................................................... 2

28 U.S.C. § 1361 ............................................................................................... 2

28 U.S.C. § 1391 ............................................................................................... 3

28 U.S.C. § 1391(e) .......................................................................................... 3

28 U.S.C. § 1651 ............................................................................................... 3

28 U.S.C. § 2201 ......................................................................................... 3, 29

28 U.S.C. § 2202 ....................................................................................... 28, 29

28 U.S.C. § 2241 .................................................................................... 2, 3, 29

28 U.S.C. § 2243 ............................................................................................. 17

28 U.S.C. § 2412 ............................................................................................. 29

Administrative Procedure Act, 5 U.S.C. § 701 et seq. ..................................... 3

Administrative Procedure Act, 5 U.S.C. § 702 ................................... 3, 27, 28

Administrative Procedure Act, 5 U.S.C. § 706(2)(A) ............................. 27, 28

 Administrative Procedure Act 5 U.S.C. § 706(2)(B) .................................... 28

Immigration and Nationality Act § 212 ......................................................... 14

Immigration and Nationality Act § 236 ......................................................... 23

Immigration and Nationality Act §240 ............................................... 3, 12, 19

**Other Authorities**

8 C.F.R. §§ 208.16-208-18 ............................................................................ 16

8 C.F.R. § 208.30(e)(2)-(3) ........................................................................... 17

8 C.F.R. § 208.31 ........................................................................................... 16

8 C.F.R. § 208.31(a) ...................................................................................... 16

8 C.F.R. § 238.1(b)(2)(i) ............................................................................... 16

Arent Fox LLP
Attorneys At Law
Los Angeles

- iii -

VERIFIED PETITION FOR
WRIT OF HABEAS CORPUS

8 C.F.R. § 238.1(f)(3) ............................................................................... 16

8 C.F.R. § 241.8(e) ................................................................................... 16

8 C.F.R. § 235.6 ........................................................................................ 17

8 C.F.R. § 1208.16(a) ............................................................................... 16

8 C.F.R. § 1235.3(d) ............................................................................ 17, 20

69 Fed. Reg. 48877, 48880 (2004) .......................................................... 16

Fed. R. Civ. P. § 5.2(a) ............................................................................... 1

Fed. R. Civ. P. § 65 ..................................................................................... 3

U.S. Const. amend. V. ...........................................................25, 26, 27, 29

U.S. Const. Art. I § 9, cl. 2 .......................................................................... 2

**INTRODUCTION**

1.    This is a Petition for a Writ of Habeas Corpus filed on behalf of Marta Carolina Barrientos Calel, J.V.C.B. and A.S.D.J.Y.B.,[1] seeking relief to remedy their unlawful detention at the Imperial Beach Border Patrol Station.  Their Alien Numbers are A203-606-035, A203-606-036 and A203-606-037, respectively.

2.    Petitioners J.V.C.B. and A.S.D.J.Y.B are minors that fled their home country of Guatemala to escape physical violence and sexual abuse.

3.    Petitioner Marta Carolina Barrientos Calel ("Carolina") is Petitioners J.V.C.B. and A.S.D.J.Y.B's mother.  She is a victim of physical abuse.  Due to repeated head trauma, Carolina is legally blind in one eye, deaf in her right ear, and experiences numbness on the right side of her body.  It is suspected that she may have a brain tumor.

4.    Petitioner J.V.C.B. is a rape-survivor.  Carolina is also a rape-survivor.

5.    Petitioners' father is involved with a powerful and violent gang in Guatemala.  Petitioners, Carolina, and Petitioners' other siblings were not safe because they were constantly abused by the gang.

6.    On March 20, 2019, Carolina fled Guatemala with Petitioners and their two other siblings.  Petitioners' father located Petitioners' siblings and against their pleas to stay with Petitioners and Carolina, took them back to Guatemala.

7.    Petitioners are not safe in Tijuana, Mexico.  The violent gang Petitioners are fleeing from know that Petitioners have been and may be sent back to live in a shelter in Tijuana, Mexico.  Petitioners believe their father and his gang are awaiting Petitioners' return.

8.    On February 14, 2020, Petitioners appeared for their court hearing date. Petitioners expressed their fear of returning to Mexico.  Thereafter, Petitioners had a non-refoulement interview with counsel but to date, counsel has not received notice

---

[1] Petitioners J.V.C.B. and A.S.D.J.Y.B.'s names are redacted pursuant to Fed. R. Civ. P. 5.2(a) to protect their identity publicly.  They are known to Respondents and their counsel.

of the decision.

9. **The family has been detained in a detention center since February 29, 2020, without any explanation as to why.**

10. **Petitioners' health and wellbeing are at risk**. Petitioners are living in a cement cell, and given no to very little food. Carolina requires immediate, extensive medical treatment for her eye and potential brain tumor. Her life is at risk in the detention centers and in Mexico. Without the necessary medical care and treatment Carolina's health has worsened. If she were to die, Petitioners would be orphaned in a foreign country with no means to provide for themselves and even less protection from the violent gang searching for them.

11. Petitioners' continued detention in the Imperial Beach Border Patrol Station is an imminent threat to their health, safety and welfare and is a direct violation of: (1) the *Flores* Settlement Agreement ("*Flores* Agreement"), (2) the *Migrant Protection Program* ("MPP") Guiding Principles and (3) the laws of the United States.

12. Given the violation of the *Flores* Agreement, the MPP's Guiding Principles, and the continued risk to Petitioners' health, safety, and lives in the CBP detention facility and Mexico, Petitioners respectfully request that this Court order DHS, CBP, ICE, and all above-captioned Respondents to release Petitioners from their custody at the Imperial Beach Border Patrol Station, until this court can consider briefing on the merits of this matter.

## JURISDICTION

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241 (habeas jurisdiction); Art. I § 9, cl. 2 of the United States Constitution (Suspension Clause); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1346(a)(2) (United States as a defendant); 28 U.S.C. § 1361 (action to compel an officer or employee of the United States or any agency thereof); 5 U.S.C. §§ 702, 706 (review of final agency decision); and ¶ 24(B) of the *Flores* Agreement. Jurisdiction lies to

grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

14.    Sovereign immunity against actions for relief other than money damages has been waived pursuant to 5 U.S.C. § 702.

15.    This Petition action arises under the Constitution of the United States; the Immigration and Nationality Act ("INA"); the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.; and the Flores Agreement, which is binding on Respondents.

16.    This Court may grant relief under the habeas corpus statute, 28 U.S.C. § 2241 et seq. (habeas corpus), 28 U.S.C. § 2201 et seq. (declaratory relief), 28 U.S.C. § 1651 (All Writs Act), and the APA, 5 U.S.C. § 702 (judgment against U.S. officers), and Federal Rules of Civil Procedure 65 (injunctive relief).

## VENUE

17.    Venue is proper in the Southern District of California because a substantial part of the events or omissions giving rise to Petitioners' claim occurred in the Southern District of California.  Petitioners are detained under the authority of the CBP San Diego Field Office, and detained at the Imperial Beach Border Patrol Station, in the alternative being detained under the authority of the ICE San Diego Field Office, the Department of Homeland Security, all of which are located in this district.  See 28 U.S.C. § 1391 (venue proper in judicial district in which a defendant in the action resides, or substantial part of the events giving rise to the claim occurred).

18.    Venue is further proper with this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are officers or employees of the United States, acting in their official capacity and/or under color of the authority of the United States, in this District.

## PARTIES

19.    Petitioners Carolina (30 year old female), J.V.C.B. (14 year old female)

and A.S.D.J.Y.B. (11 year old male) are from Guatemala.  They entered the United States seeking asylum and are currently being detained in the Imperial Beach Border Patrol Station, by CBP.

20.     Respondent William P. Barr is the Attorney General of the United States and the head of the United States Department of Justice ("DOJ").  Respondent Barr is responsible for advising the government on the lawful administration and enforcement of the immigration laws and policies.  Respondent Barr further has ultimate authority over the Executive Office for Immigration Review ("EOIR"), the agency within DOJ responsible for the immigration court system.  He in his official capacity is the ultimate legal custodian of Petitioners.  Respondent Barr is sued in his official capacity.

21.     Respondent Chad F. Wolf is the Acting Secretary of DHS, the Department of the Executive Branch of the U.S. government that oversees the component agencies responsible for enforcing the immigration laws of the United States.  Respondent Wolf directs and is responsible for the administration and enforcement of the immigration laws in the United States.  He is sued in his official capacity.

22.     Respondent Mark A. Morgan is the Acting Commissioner of CBP, the agency within DHS that is responsible for the initial processing and detention of noncitizens apprehended near the U.S. border.  In that capacity, Respondent Morgan has direct authority over all CBP policies, procedures, and practices relating to the apprehension of immigrant minors.  CBP's Flores Agreement responsibilities include, among others, determining whether and in what manner to transfer and/or release minors, and briefly detaining immigrant minors during initial processing.  He, in his official capacity is a legal custodian of Petitioners.  Respondent Morgan is sued in his official capacity.

23.     Respondent Matthew T. Albence is the Acting Director of ICE, the agency within DHS that is responsible for carrying out removal orders, oversees

enforcement and removal operations, and is responsible for the detention of noncitizens throughout the United States.  Respondent Albence has direct authority over all ICE policies, procedures, and practices relating to the detention and deportation of noncitizens.  ICE's Flores Agreement responsibilities include, among other things, placing each detained immigrant minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with ICE's interests to ensure the minor's timely appearance before immigration courts, release and reunification, and to protect the minor's well-being and that of others; and the responsibility to make and continue efforts at reunification pursuant to ¶ 14 of the Flores Agreement.  Respondent Morgan is sued in his official capacity.

24.     Respondent Greg Archambeault is the San Diego Field Office Director of U.S. Immigration and Customs Enforcement ("ICE").  He, in the alternative to Respondent Chad F. Wolf, is in his official capacity a legal custodian of Petitioners.  Respondent Archambeault is sued in his official capacity.

25.     Respondent Rodney S. Scott is the Chief Patrol Agent of the Imperial Beach Border Patrol Station.  He in his official capacity is the legal custodian of Petitioner.  Respondent Scott is sued in his official capacity.

<u>**FACTS**</u>

<u>**Petitioners' Experience**</u>

26.     Petitioners Carolina (30 year old female), J.V.C.B. (14 year old female) and A.S.D.J.Y.B. (11 year old male) are from Guatemala.  (*See* Declaration of Marta Carolina Barrientos Calel ("Calel Decl."), ¶ 3).

27.     **Fleeing the Dangers in Guatemala**.  Petitioners are victims of gang violence and physical and psychological abuse.  (*Id.*, ¶ 4).  The minor petitioners' father belongs to a powerful and violent gang.  Because of that, Petitioners were constantly subjected to threats of violence and abuse.  (Id., ¶¶ 3-4).  Additionally, Petitioners J.V.C.B. and Carolina are rape-survivors.  (*Id.*, ¶ 4).

28.     To escape gang violence and abuse, Carolina fled Guatemala with her four minor children, Petitioners and two siblings. (*Id.*). However, the minor Petitioners' father, Carolina's former husband, located the siblings, and took them back to Guatemala. (*Id.*, ¶ 3). The Guatemalan gang Petitioners are running away from now knows Petitioners are or will be in Tijuana, Mexico. (*Id.*, ¶ 7).

29.     **Court Hearing and Credible Fear Interview.** On February 14, 2020, Petitioners presented themselves in court and expressed their fear of returning to Mexico given that their father's gang knew their location. (*Id.*). Petitioners were detained and given a credible fear interview, which took over three (3) hours. (*Id.*, ¶ 8-10).

30.     Petitioners were held in the detention center for five (5) more days after their credible fear interview; they were not told why. (*Id.*, ¶ 14). During that time, Carolina was misled and bullied by officials into signing papers agreeing to go back to Mexico and verbally abused by the officials, who taunted her about her disabilities. (*Id.*, ¶¶ 11-13). When Carolina would request medication, her requests were denied and medication was withheld. (*Id.*, ¶ 15). The family was given very little food, and told to search through the food scraps left by other families. (*Id.*, ¶ 9).

31.     Carolina has immediate medical needs and is not receiving adequate necessary medical care and treatment in CBP Detention or Mexico. Carolina has psychological and physical disabilities that require immediate medical care and treatment, which have been refused by U.S. officials. (*Id.*, ¶¶ 15-18). Years of trauma to her head have left her blind in one eye, diminished her vision in her remaining eye and severely impacted her hearing in her right ear. (*Id.*, ¶ 18). She has numbness on the right side of her body. (*Id.*). It is also suspected that she may have a brain tumor, which may explain her progressive loss of vision in her only eye. (*See* Exhibit K and Exhibit L).

32.     According to Dr. Charles Beeson, an ophthalmologist and volunteer at the Refugee Health Alliance, Dr. Beeson has examined Carolina and noted that she

is in need of "urgent formal visual field testing, neuro imaging of the right parietal area of the brain, either by CT or MRI, and consultation with either a neurologist or neuro-ophthalmologist to rule out a brain tumor or other pathology that could be causing progressive loss of peripheral vision in her only eye." (*See* Exhibit K). Dr. Beeson notes that there "is a large body of research that supports both the need for treatment and long-term health costs and repercussions if this condition is left untreated including permanent disability, death, and permanent and total loss of sight." ( *Id.*) In Dr. Beeson's medical opinion and given the current state of healthcare provision in Tijuana, the barriers to obtaining quality medical care, and the complexity of the patient's medical condition that currently the patient does not have access to the medical care needed to adequately prevent risk of decompensation and subsequent poor health outcomes including disability and death. ( *Id.*)

33.    According to Dr. Hannah Janeway, a licensed physician in the State of California and co-director and member of the board of directors for Refugee Health Alliance, Carolina suffers from both physical and psychiatric conditions that cannot be properly evaluated or managed in Mexico. (*See* Exhibit L). Dr. Janeway noted that Carolina "needs urgent formal visual field testing, neuro-imaging, and consultation with a neurologist or a neuro-ophthalmologist" because if her conditions are left untreated, "there are severe short and long-term health consequences including permanent disability, death, and permanent and total loss of sight." (*Id.*) In Dr. Janeway's medical opinion, Carolina "does not have access to the medical care that she needs to further diagnose and manage her health condition at this time and that this could lead to permanent disability and severe health outcomes for her." (*Id.*) It is Dr. Janeway's medical opinion that Petitioners' and Carolina's detention be ended immediately. (*Id.*)

34.    Put simply, Carolina's life is at-risk with her continued detention in CBP facilities and in Mexico. (*Id.*).

35.    **Tijuana, Mexico is not a safe place for migrant minors from Central**

**America**.  According to the U.S. Department of State, Travel Advisories, Tijuana, Mexico is identified as a Level 2 location, warning travelers to "exercise increased caution in Mexico due to crime and kidnapping."  "Criminal activity and violence" are present in Tijuana, Mexico with "the number of homicides" being "particularly notable."[2]  Researchers documented the cases of forty-two (42) migrants returned to Tijuana, Mexico under MPP that were raped, kidnapped, assaulted, and/or pursued by persecutors there.  This figure is likely a gross underestimate of the harm imposed to asylum seekers given the limited monitoring of the program to date; review of published media accounts, NGO reports, court filings, and other publicly available information, reveal at least 74 other MPP returnees subject to violent attacks or threats in Mexico.[3]

36.    Migrants seeking asylum and forced into MPP have experienced rape, kidnappings, robbery, and other serious harm in Mexico.  "As of December 23, 2019, there are at least 660 publicly reported cases of murder, rape, torture, kidnapping, and other violent assaults against asylum seekers and migrants forced to return to Mexico", according to Human Rights First.[4]  A separate study bolsters those findings; "[r]esearchers from the University of California, San Diego interviewed 607 asylum seekers returned to the towns of Tijuana and Mexicali under MPP and found that nearly a fourth of the individuals interviewed had been threatened with violence, half of which had suffered physical violence".[5]

---

[2] Mexico Travel Advisory, Travel.state.gov (2020), https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/mexico-travel-advisory.html (last visited March 2, 2020).
[3] Human Rights First, Delivered to Danger: Illegal Remain in Mexico Policy Imperils Asylum Seekers' Lives and Denies Due Process (2019), https://docs.house.gov/meetings/JU/JU01/20190906/109889/HHRG-116-JU01-Wstate-DrakeS-20190906-SD003.pdf (last visited Jan 6, 2020).
[4] Human Rights First, "Delivered to Danger: Trump Administration sending asylum seekers and migrants to danger" (2019), https://www.humanrightsfirst.org/campaign/remain-mexico (last visited Jan 9, 2020).
[5] US Immigration Policy Center, Seeking Asylum: Part 2, 6, 11-12 (2019), https://usipc.ucsd.edu/publications/usipc-seeking-asylum-part-2-final.pdf (last visited Jan 9, 2020).

37.     Central Americans are specifically targeted by gangs, criminals, and corrupt officials in Mexico on account of their nationality and, at times, race.  Central Americans are more likely than others to be victims of kidnappings and crimes of violence because it is assumed they are traveling to the United States because they have family members who live there and can pay ransoms.  They are offered limited protection by the Mexican government and police.

38.     **Petitioners have been detained since February 29, 2020**.  Petitioners presented themselves to CBP on February 29, 2020 and have been detained ever since.  This is in violation of the *Flores* Agreement.  They were given a non-refoulement interview with counsel present, but to date, counsel has not received notice of a decision.  CBP attempted to return the family to Mexico but Mexican authorities denied this move when they were alerted of Carolina's health concerns.

## THE *FLORES* SETTLEMENT AGREEMENT

39.     **Procedural Status**.  In 1985, a class action was brought against the government challenging immigration enforcement policies directed toward migrant children.  After over 10 years of litigation, in 1997, the plaintiff class and the government entered into the "*Flores* Settlement Agreement," which established national standards regarding the detention, release and treatment of all children in immigration custody.  As a general principle, the *Flores* Agreement maintained that, "[t]he [legacy Immigration and Naturalization Service] treats, and shall continue to treat, all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors." *Flores* Settlement Agreement ¶ 11.  The *Flores* Agreement "continues to govern those agencies that now carry out the functions of the former INS." *Flores v. Sessions*, 862 F.3d 863, 869 (9th Cir. 2017).  It remains binding on DHS, ICE, and other government agencies, and indeed, was recently reaffirmed by the Ninth Circuit in *Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016).

40.     **The Agreement requires the expeditious release of minors**.  There are several notable components of the *Flores* Agreement.  First, the *Flores*

Agreement requires expeditious release of minors from custody to a designated adult guardian, except where detention is necessary to ensure the minor's appearance in immigration court or to ensure the minor's safety or the safety of others. *Flores* Settlement Agreement ¶ 14. It applies to all minors in immigration custody, regardless of whether the child is apprehended unaccompanied or accompanied. *See Flores*, 828 F.3d at 905-06; *Flores* Settlement Agmt. ¶ 10.

41. The *Flores* Agreement also requires that a minor in immigration custody be released "in all cases within 72 hours." *Flores* Settlement Agmt. ¶ 14.

42. **Obligations to provide certain standards of living conditions**. The *Flores* Agreement also contains obligations of Respondent in providing for certain living conditions for minors that are detained. The *Flores* Agreement mandates that detained minors are housed "in facilities that are safe and sanitary and that are consistent with the [Immigration and Naturalization Service's] concern for the particular vulnerability of minors." *Flores* Settlement Agreement, ¶ 12. Specifically, the *Flores* Agreement requires that the "Facilities [ ] provide access to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to protect minors from others, and contact with family members who were arrested with the minor." (*Id.*)

43. **DHS and ICE's documented history of detaining minors under harsh conditions are in violation of the minors' rights**. DHS and ICE have a documented history, especially under the current administration and the MPP program, of detaining immigrant minors and refusing them their statutory rights under the *Flores* Agreement in manners that Courts have roundly disapproved. A survey conducted of 200 migrants detained in CBP facilities found a systemic denial of medical care when requested. Researchers from UC San Diego surveyed over 600 migrants who had been in CBP custody and returned to Mexico pursuant to MPP; they found that "nearly 2 out of every 3 (63.3%) who had medical issues reported

that their medical issues were not adequately addressed."[6]   DHS has returned unaccompanied and sick children as well as vulnerable adults to Mexico under MPP in violation of internal policy.  For example, under that policy, vulnerable individuals including unaccompanied children and those with "known physical/mental health issues," are not to be returned to Mexico.  Yet CBP has repeatedly returned individuals with serious medical conditions that were known or would have been obvious to CBP officers.[7]

44.     CBP Report Findings.   A report published by the CBP Office of Inspector General in July 2019 specifically detailed the severe conditions at CBP holding facilities (the "DHS Report").  This DHS Report detailed the overcrowding that exists at CBP facilities and noted that 31% of the children detained at these facilities were held longer than the seventy-two (72) hour period permitted under the Flores Agreement.

45.     CBP detention facilities are commonly referred to as *hieleras*, the Spanish word for iceboxes, due to their infamously cold temperatures.  CBP subjects individuals to inadequate food and hygiene, exposure to illnesses, overcrowding, verbal harassment, freezing temperatures, and other abuses.

46.     The DHS Report also detailed that the conditions under which these children are held, specifically in the dangerous border cities, such as Tijuana, Mexico violate the *Flores* Agreement.  Namely, the DHS Report detailed that many children had no access to showers, limited access to a change of clothes, and sparse access to nutritious meals.  There were the same conditions that existed in June 2017, when the District Court determined that that the government was failing to comply with its obligations under the *Flores* Agreement.   Children and their parents were

---

[6] US Immigration Policy Center, Seeking Asylum: Part 2, *supra* note 7, at 6.
[7] Jasmine Aguilera, 'Vulnerable' Asylum Seekers Are Supposed to Be Able to Stay in the U.S. – But Critically Ill Migrants Are Still Being Sent Back to Mexico Time (2019), https://time.com/5751734/ill-asylum-seekers-sent-back-to-mexico/ (last visited Jan 9, 2020).

incarcerated in secure, unlicensed facilities for up to eight months—well beyond the five-day time limit or the exception of 20 days previously authorized in times of emergency or influx. Additionally, the district court found that the government had failed to meet other obligations regarding Border Patrol facility conditions, including: inadequate provision of food; inadequate access to clean drinking water; unsanitary and unsafe conditions; freezing temperatures; and inadequate sleeping conditions.

## THE MIGRANT PROTECTION PROGRAM

47. **Procedure before the MPP**. Asylum is a discretionary form of relief that may be granted to individuals with a well-founded fear of persecution on account of a protected ground – i.e., their race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42)(A), 1158. Before implementation of MPP, individuals applying for asylum at or near a port of entry were placed in expedited removal ("ER") proceedings or in full removal proceedings before an Immigration Judge pursuant to the Immigration and Nationality Act ("INA") §240. 8 U.S.C. §§ 1225 (b)(1), 1229a.

48. Individuals subject to ER who expressed a fear of prosecution or torture upon removal were given a Credible Fear Interview ("CFI") to assess whether there exists a significant possibility of establishing eligibility for asylum. 8 U.S.C. § 1225(b)(1)(A)(i).

49. Until MPP, most people who arrived at or near the southern U.S. border to seek asylum were subjected to the ER and CFI process. Those who passed a CFI remained in the United States pending completion of their removal proceedings.

50. **Implementation of the MPP**. On December 20, 2018, DHS announced the commencement of MPP. Under MPP, DHS forces individuals and families who have come to the United States from a non-contiguous country to seek asylum to return to Mexico while their claims are being adjudicated. *See* Migrant Protection Protocols, U.S. Dep't Homeland Security (Jan. 24, 2019), https://www.dhs.gov/news/2019/01/24/migrant-protection-protocls; *see also* 8

U.S.C. § 1225(b)(2)(C) (authorizing the Government to "return" certain aliens who "arriv[e] on land . . . from a foreign territory contiguous to the United States" to that neighboring country pending removal proceedings).  The MPP thus applies to aliens who have no ties to Mexico.

51.    Since January 2019, more than 50,000, and possibly over 56,000 asylum seekers have been forced back into Mexico to await their court hearings.[8]  These individuals must then find temporary refuge, shelter and basic amenities in the Mexican border cities like Tijuana and Mexicali, where there are insufficient shelter and resources to accommodate their basic needs.

52.    DHS applies MPP to individuals and families regardless of whether they presented at a port of entry or were apprehended after entering the United States without inspection.

53.    **The MPP Guidelines exclude specific groups from the MPP**. According to the Memorandum for Guidance MPP, certain aliens, including (1) vulnerable aliens; … or (3) aliens of interest to the Government of Mexico or the United States, will not be placed into MPP.[9]  In addition, the following categories of individuals are also specifically excluded from MPP:

1.     unaccompanied alien children;

2.     citizens or nationals of Mexico;

3.     aliens processed for expedited removal;

4.     aliens in special circumstances such as: returning LPRs seeking admission (subject to INA section 212), aliens with an advance parole document or in parole status, **aliens with known physical/mental health**

---

[8] Contrasting Experiences: MPP vs. Non-MPP Immigration Court Cases, Trac.cyr.edu (2019), https://trac.syr.edu/immigration/reports/587/ (last visited Jan 9, 2020).
[9] U.S. Customs and Border Protection, MEMORANDUM FOR: Guidance on Migrant Protection protocols (2019) ("U.S. Customs and Border Protection, MPP Guiding Principles (2019),"), https://www.cbp.gov/sites/default/files/assets/documents/2019-Jan/MPP%20OFO%20Memo%201-28-19.pdf (last visited Jan 6, 2020).

**issues,** aliens who are criminals or have a history of violence, or aliens who are of interest to the Government of Mexico or United States;

5.    any alien who is more likely than not to face persecution or torture in Mexico; or

6.    other aliens at the discretion of the Port Director. [10]
(emphasis added.)

## THE NON-REFOULEMENT PROCESS

54.    The Non-Refoulement Process.  If persons seeking asylum express a fear of return to Mexico, they are referred for a non-refoulement interview with an United States Citizenship and Immigration Services ("USCIS") asylum officer to determine whether they are "more likely than not" to face persecution or torture in Mexico.

55.    Seekers of non-refoulement protections must provide evidence in the interviews that they are "more likely than not" to be persecuted in Mexico on account of a protected ground (race, religion, nationality, political opinion, or particular social group).  *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421 (1987).

56.    If the USCIS determines after a non-refoulement interview that individuals or families are more likely than not to be persecuted on account of a protected ground or tortured if returned to Mexico, the individuals or families are removed from MPP and either released or detained in the United States pending the conclusion of their removal proceedings.

57.    If USCIS does not so determine, the individuals and families are returned to Mexico and forced to remain in MPP.

58.    Non-refoulement interviews are difficult to pass and are carried out in an opaque manner that does not prioritize protecting vulnerable individuals.  First, the process requires individuals to spontaneously state a risk of being returned to Mexico, which many will not know they need to volunteer this information, and,

---

[10] U.S. Customs and Border Protection, MPP Guiding Principles (2019)

second, the circumstances of interviews, in requiring a "more likely than not" standard of risk and in denying individuals the right to counsel, such that the "inadequate procedures all but ensure[ ] violation of the non-refoulement obligation." [11]

## THE CONVENTION AGAINST TORTURE AND OTHER CRUEL, INHUMAN OR DEGRADING TREATMENT OR PUNISHMENT (CAT)

59.    The United States has committed itself not to return people to places where the individuals face persecution or torture.  The United States signed the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT) in 1988, pledging not to "expel, return . . . or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."

60.    United States statutes require review by an immigration judge before the government removes someone who fears persecution.   Individuals in removal proceedings may apply for asylum and for two other related, non-discretionary forms of protection – withholding of removal and protection under CAT.

61.    Withholding of removal under 8 U.S.C. § 1231(b)(3) must be granted to noncitizens who demonstrate that their "life or freedom would be threatened" on account of a protected ground in the country to which they face removal.  Relief under CAT must be granted to noncitizens who demonstrate that their "life or freedom would be threatened" on account of a protected ground in the country to which they face removal.  Relief under CAT must be granted to noncitizens who demonstrate that they are more likely than not to be tortured in the country to which they face removal.  8 C.F.R. §§ 208.16-208.18.  These two forms of mandatory

---

[11] Brief of Amicus Curiae Local 1924 in Support of Plaintiffs-Appellees' Answering Brief and Affirmance of the District Court's Decision at 17-22, Case No. 3:19-CV-00807-RS (9th Cir. June 26, 2019) available at https://www.documentcloud.org/documents/6172520-Local-1924-Amicus-Brief.html; *See also* Bobby Allyn, NPR Choice page Npr.org (2019), https://www.npr.org/2019/06/27/736461700/asylum-officers-trumps-remain-in-mexico-policy-is-against-moral-fabric-of-u-s (last visited Jan 9, 2020).

protection implement the United States' non-refoulement obligations.

62.     Because they are mandatory forms of protection, withholding of removal and CAT relief are available even when noncitizens are otherwise subject to summary removal processes in which immigration officer orders removal without a proceeding in front of an immigration judge.

63.     For example, when individuals with certain criminal convictions are placed in a summary process called "administrative removal," or when those previously-removed are placed in a summary process to "reinstate" their prior removal order, they can still assert a fear of return to the country of intended removal. *See* 8 U.S.C. §§ 1228(b), 1231(a)(5); 8 C.F.R. §§ 208.31(a), 238.1(b)(2)(i), 238.1(f)(3), 241.8(e). Where the officer finds a "reasonable fear" – defined as a "reasonable possibility" that a noncitizen would be persecuted on account of a protected ground, or tortured – the noncitizen is referred for full withholding of removal or CAT proceedings in front of an immigration judge. *Id.* § 208.31. And where an asylum officer does not find such a fear, an individual receives a review of that reasonable fear determination by an immigration judge. *Id.* § 208.31(g).

64.     DHS lacks unreviewable authority to send noncitizens to a country in which they fear persecution or torture. *See* 8 C.F.R. §§ 208.31, 1208.16(a).

65.     Expedited removal procedures apply to noncitizens who arrive in the United States at a port of entry and who engage in misrepresentation or lack of visa or other documents permitting their admission, 8 U.S.C. § 1225(b)(1). DHS may also apply these proceedings to recent illegal border crossers, i.e., those apprehended within 100 miles of the border and who cannot show that they have been in the United States for more than two weeks. *See* 8 U.S.C. § 1225(b)(1)(A)(iii); Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877, 48880 (2004).

66.     However, noncitizens who demonstrate a "credible fear of persecution or torture" avoid expedited removal and are placed into regular removal proceedings under 8 U.S.C. § 1229a, where they may apply for asylum, withholding of removal,

and CAT relief.  8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. §§ 208.30(e)(2)-(3), 235.6.

If an asylum officer does not find a credible fear, the decision is reviewable by an

immigration judge.  8 U.S.C. § 1225(b)(1)(B)(iii)(III).

## HABEAS AUTHORITY & EXHAUSTION

67.    There is a presumption of reviewability and the Government faces a

"heavy burden" when arguing that a statutory scheme "prohibit[s] all judicial review"

of agency decision-making.  *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015)

(quoting *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975)).  Courts assess whether

the congressional intent to preclude judicial review is "fairly discernible in the

statutory scheme." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984) (quoting

*Ass'n of Data Processing Serv. Orgs. V. Camp*, 397 U.S. 150, 157 (1970)).  Courts

will look at the statute's "text, structure, and purpose." *Elgin v. U.S. Dep't of

Treasury*, 567 U.S. 1, 10 (2012).

68.    Because this action arises in the context of habeas corpus, this Court has

plenary authority, both statutory and equitable, to remedy Petitioners' continuing

unlawful detention.  The relief that Petitioners seek here is entirely consistent with

the nature and history of the Great Writ, and its mandate to fashion appropriate relief

based on the facts and circumstances of a particular case in order to correct errors of

law and justice.  *See* 28 U.S.C. § 2243 ("The court shall summarily hear and

determine the facts, and dispose of the matter as law and justice require"); *Harris v.

Nelson*, 394 U.S. 286, 292 (1969) ("The language of Congress, the history of the writ,

the decisions of this Court, all make clear that the power of inquiry on federal habeas

corpus is plenary") (internal quotations and citations omitted).

69.    Habeas jurisdiction is appropriate on several grounds.  First, Petitioners

are detained. *See In re: Maria Angelita Carbaja*: BIA Dec. 10, 2019 ("when DHS

requires that an alien remain in Mexico awaiting a removal hearing the alien shall be

considered detained for a proceeding . . .").

70.    Further, this Court has habeas jurisdiction pursuant to 8 CFR 1235.3(d)

which provides that "In its discretion, the Service may require an alien who appears inadmissible and who arrives at a land border port-of-entry from Canada or Mexico, to remain in that country while awaiting a removal hearing.  Such alien shall be considered detained for a proceeding within the meaning of section 235(b) of the Act…".  Even if Petitioners are released from CBP detention facilities, this Court retains habeas jurisdiction because this petition was filed while Petitioners were in custody.  *See Spencer v. Kemna*, 523 U.S. 1 (1998) ("'in custody' requirement was satisfied as long as petitioner was incarcerated at time petition was filed.  28 U.S.C.A. § 2254.")

71.     The law is equally clear that habeas courts have broad authority to enter any form of order, including declaratory or injunctive relief, where, as here, the requested relief directly compels or indirectly "affects" or hastens the Petitioners' release from custody.  *See Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) (noting that habeas courts have the "power to fashion appropriate relief other than immediate release"); *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) (emphasizing that habeas statute "does not limit the relief that may be granted to discharge of the applicant from physical custody.  Its mandate is broad with respect to the relief that may be granted.").

72.     Additionally, as minors within the legal custody of Respondents, Petitioners are protected by the consent decree entered by the U.S. District Court for the Central District of California in *Flores v. Reno*, Case No. CV 85-4544-RJK(Px) ("Flores Agreement").  The *Flores* Agreement is a contract where the United States, through the Attorney General, is a party to that contract.  *See*, e.g., *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent …").  Petitioners seek to enforce the United States' obligations under that contract and therefore Petitioners' claim is governed by federal common law.  Federal common law is federal law, and disputes governed by it "aris[e] under the …

laws … of the United States." 28 U.S.C. § 1331.  Therefore, this Court has subject-matter jurisdiction.

73.     There "is no federal general common law." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  However, federal common law governs those pockets of law "marked by pressing interests of the United States." *Wallach v. Eaton Corp.*, 837 F.3d 356, 365 n.11 (3d Cir. 2016).  Those pockets include cases "concerned with the rights and obligations of the United States." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981).  Because the United States is a party to the *Flores* Agreement through its officers and agencies, contractual claims to enforce that settlement arise under federal common law.   Thus, there is federal-question jurisdiction here.

74.     As discussed above, the *Flores* Agreement sets national standards for detention, release, and treatment of all such minors.   These terms include the availability of judicial oversight of detention by an Immigration Judge and judicial review of other violations by any United States District Court.  The Flores Decree agreement remains valid in its entirety.

75.     No exhaustion requirement applies here because no administrative agency exists to adjudicate Petitioners' constitutional challenges.   Neither an immigration judge nor the Board of Immigration Appeals can rule on Petitioners' constitutional claims. *See Matter of C--,* 20 I&N Dec. 529, 532 (BIA 1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the Act and the regulations.") (citing *Bagues-Valles v. Immigration & Naturalization Serv.*, 779 F.2d 483, 484 (9th Cir. 1985) ("BIA . . . has no jurisdiction to adjudicate constitutional issues")).   The custody redetermination procedures in timmigration and Nationality Act require that an individual is in removal proceedings or has a removal order. *See Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942, 946 (9th Cir. 2008).

76.     In addition, the exhaustion requirement may be excused where "a

particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). "[I]rreparable harm is presumed where there is an alleged deprivation of constitutional rights." *A158m. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).  Petitioners suffer irreparable harm each day.

77.    The ongoing unlawful detention of Petitioners for nine (9) days and counting is a violation of numerous constitutional and statutory rights.

## CLAIMS FOR RELIEF

### COUNT ONE

### Respondents' Detention of Petitioners Violates the Flores Settlement Agreement

*Violations of Paragraphs 14 and 15 – Release Within 72 Hours*

78.    Petitioners incorporate by reference each and every prior subsequent allegation as though fully set forth herein.

79.    Petitioners are minors who are being detained by Respondents.  *See In re: Maria Angelita Carbaja*: BIA Dec. 10, 2019 ("when DHS requires that an alien remain in Mexico awaiting a removal hearing the alien shall be considered detained for a proceeding…").

80.    Petitioners are in legal custody as specified in 8 CFR 1235.3(d).  *See Spencer v. Kemna*, 523 U.S. 1 (1998) ("'in custody' requirement was satisfied as long as petitioner was incarcerated at time petition was filed.  28 U.S.C.A. § 2254.")

81.    Petitioners continued detention in the Imperial Beach Border Patrol Station violates ¶ 14 and 15 of the *Flores* Agreement.  Paragraph 14 requires the release of a minor from the government's custody unless detention is necessary to secure the minor's appearance before the immigration court.  *See Flores* Settlement Agmt. ¶ 14.  Paragraph 15 of the Flores Agreement further provides that the release of a minor must take place within seventy-two (72) hours.  *Id.* at ¶ 15.

82.    Petitioners' detention began on February 29, 2020.  They remain in

1    custody and detained by Respondents in Imperial Beach Border Patrol Station.

2        83.    Respondents therefore continue to violate ¶ 14 and 15 of the *Flores*

3    Agreement by failing to release Petitioners from CBP custody as Petitioners have

4    been detained for over nine (9) days.

5        *Violations of Paragraphs 11 and 12 – Appropriate Conditions and Least*

6                            *Restrictive Setting*

7        84.    In addition, and alleged herein as an independent basis for relief,

8    Petitioners continued detention violates ¶ 11 and 12 of the *Flores* Settlement

9    Agreement.

10       85.    Paragraph 11 of the *Flores* Agreement requires that the government treat

11   Petitioners, minors, "with dignity, respect and special concern for [their] particular

12   vulnerability" as minors, and therefore the government must place them in "the least

13   restrictive setting appropriate to the minors' age and special needs, provided that such

14   setting is consistent with its interests to ensure the minors' timely appearance before

15   the INS and the immigration courts and to protect the minors' well-being . . . ."

16   *Flores* Settlement Agmt. ¶ 11.

17       86.    Petitioners' placement in the Imperial Beach Border Patrol Station is far

18   from the protections that Respondents are mandated to provide to Petitioners for their

19   well-being.   Rather, Petitioners' detention in the Imperial Beach Border Patrol

20   Station is a greater threat to Petitioners' life and welfare.  In the detention center,

21   Petitioners do not have access to basic living necessities, including a change of

22   clothing, nutritious or even adequate meals and access to clean drinking water,

23   showers or bathrooms.

24       87.    Moreover, Carolina has substantial medical needs that cannot be met in

25   the detention center or in Mexico.  The lack of care will have a severe detrimental

26   impact on Petitioners' physical and mental health as they would become orphaned in

27   a foreign country without the means to take care of themselves.

28       88.    Additionally, the *hieleras* and shelters in Mexico do not provide

Petitioners any protection from gangs, cartels and potential kidnappers.  Particularly when Petitioners' father is affiliated with one of the largest gangs in Guatemala and the gang knows where Petitioners will be in Tijuana, Mexico.  Petitioners' other siblings have already been taken.  As a result of the lack of protection and security in Mexico, Petitioners believe there is a high likelihood that Petitioners may also be kidnapped and taken back to Guatemala.

89.    These conditions exist in contravention to the *Flores* Agreement, which requires, amongst other conditions, that the government "hold minors in facilities that are safe and sanitary." *Flores* Settlement Agmt. ¶ 12.

90.    Furthermore, Petitioners' detention in the Imperial Beach Border Patrol Station continues to place their life in imminent risk.  *See Carbaja, supra*, ¶ 37.

91.    The circumstances of Petitioners' detention, as described above, do not comply with the obligation to "hold minors in facilities that are safe and sanitary" given the unprotected and squalid facilities and the unfit, and certainly not hot, meals provided.  *See* Calel Decl. at ¶¶ 8-9, 13 to *Flores* Settlement Agmt. ¶ 12.   Minors should not be forced to live in such conditions, in a cement cell with a single toilet, given very little to no food (or having to look in the trash for food) and subjected to seeing their mother be verbally abused.

*Violations of Paragraph 24.B. – Judicial Review*

92.    In addition, and alleged herein as an independent basis for relief, ¶ 24.B. of the *Flores* Agreement provides any minor (1) the right to seek judicial review of the minor's detention placement, and (2) the right to allege noncompliance with the minimum standards for minor detention.   "Minor" for purposes of the *Flores* Agreement "shall apply to any person under the age of eighteen (18) years who is detained in the legal custody of the INS", now in this context DHS. *Flores* Settlement Agmt. ¶ 4.

93.    In addition, and alleged herein as an independent basis for relief, the *Flores* Agreement, Para. 24B, creates a right to a bond hearing before an immigration

judge, a right that the government intentionally seeks to restrict for persons returned to Mexico under MPP by re-designating even those who enter without inspection, as "arriving aliens" in an attempt to strip the immigration Judge's jurisdiction to consider bond under INA 23 USC 1226.

94.     Respondents deprive Petitioners of their rights (1) to seek judicial review of their placement as minors, and (2) to allege noncompliance with the minimum standards for minor detention.

95.     Each of the above-alleged actions violates the *Flores* Agreement.

## COUNT TWO

### Respondents' Detention of Petitioners Violates the CAT and the United States' Non-Refoulement Obligations

96.     Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

97.     United States statutes require review by an immigration judge before the government removes someone who fears persecution.

98.     The duty of non-*refoulement* prohibits state-parties from expelling or returning a refugee in any manner whatsoever to the frontiers or territories where his life or freedom would be threatened on account of his race, religion, nationality, member of a particular social group, or political opinion. 8 U.S.C. § 1231 (b)(3).

99.     *Non-refoulement* is one of the central guiding principles of the Refugee Act of 1980, which was enacted to bring U.S. law into compliance with the international Refugee Convention and Protocol.

100.   Petitioners have demonstrated that their life or freedom would be threatened on account of their father's gang knowing their location.  Petitioners' siblings have already been kidnapped and taken back to Guatemala.

101.   For each of the reasons alleged in the facts regarding conditions in Mexico and the Petitioners' medical conditions, the Court should terminate Petitioners' detention and order their return and release into the United States.

**COUNT THREE**

**Respondents' Inclusion of Petitioners to the MPP is a Violation of the Guidelines on MPP**

102.   Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

103.   The MPP *Guidelines on Migrant Protection Protocols* state that any alien that has health issues or is vulnerable is not amendable to MPP.[12]   Carolina suffers from a litany of medical ailments.   Being detained in the Imperial Beach Border Patrol Station restricts her ability to access routine medical care and treatment, such medicines, especially given the notorious lack of medical treatment CBP facilities give to detainees and Carolina's own experience of having her medication withheld from her.  (*Id.*, ¶ 17).

104.   Petitioners should be exempt from the MPP because Carolina has medical documented physical and mental health issues that are not being properly addressed nor treated in Mexico.   Carolina is blind in one eye, deaf in one ear, experiences debilitating numbness in her body and may have a possible brain tumor. Her treating physicians emphasize the complexity of Carolina's medical conditions and the fact that she does not have access to the medical care needed to adequately prevent risk of decompensation and subsequent poor short and long term health outcomes including permanent disability, death, and permanent and total loss of sight.  (*See* Exhibit K and Exhibit L).

105.   Additionally, Petitioners can show that they are more likely than not to be persecuted in Mexico on account that they are vulnerable aliens, as Central American immigrants.

106.   Petitioners are minors and of Guatemalan nationality.   There is a litany

---

[12] U.S. Customs and Border Protection, MEMORANDUM FOR: Guidance on Migrant Protection protocols (2019), https://www.cbp.gov/sites/default/files/assets/documents/2019-Jan/MPP%20OFO%20Memo%201-28-19.pdf (last visited Jan 6, 2020).

of evidence that Central Americans are specifically targeted by gangs and criminals in Mexico because they are afforded limited protection by the Mexican government and police.  Central Americans are also more likely than others to be victims of kidnappings and crimes of violence because it is assumed they are traveling to the United States because they have family members who live there and can pay ransoms.[13]

107.   As foreigners in Mexico, Petitioners' lives remain at risk if they are forced to remain in Mexico per the MPP.

## COUNT FOUR

### Respondents' Detention of Petitioners Violates Fifth Amendment Due Process

108.   Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

109.   As persons within the United States, Petitioners are protected by every clause of the United States Constitution that is not expressly reserved to citizens. This protection includes the Due Process Clause of the fifth Amendment.  The Due Process Clause provides that "no person shall be . . . deprived of life, liberty, or property without due process of law."  U.S. Const. Amend V.

### Procedural Due Process Rights

110.   Under the Due Process Clause of the Fifth Amendment, an individual is entitled to the procedural due process right of a timely and meaningful opportunity to demonstrate that he or she should not be detained.  In the case of civil, non-punitive immigration detention, the Supreme Court has held that such detention requires "a special justification . . . [that] outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690. For that reason, it is the government's burden to establish whether detention is justified. *Tijani v. Willis*, 430 F.3d 1241, 1246-47 (9th Cir. 2005) (Tashima, J., concurring).

---

[13] John Burnett, NPR Choice page Npr.org (2019), https://www.npr.org/2019/08/23/753660088/migrants-in-mexico-seeking-u-s-asylum-wait-amid-dangerous-conditions (last visited Jan 9, 2020).

111.   Respondents have yet to justify Petitioners' nine (9) day-detention in the Imperial Beach Border Patrol Station. *Zadvydas*, 533 U.S. at 690. Any interest that Respondents may have in effectuating Petitioners' order to be transported to and remain in the Imperial Beach Border Patrol Station does not outweigh Petitioners' right, under the Constitution and the federal statutes and regulations governing their custody, to fair and meaningful review of their detention.

112.   Respondents' detention of Petitioners without a hearing before a neutral decision-maker to determine whether the detention is necessary, especially as minors, violates Petitioners' procedural due process rights under the Due Process Clause. *See Padilla v. US Immigration & Customs Enf't,* No. 18-cv-928, 2019 WL 1506754 at *4 (W.D. Wash. Apr. 5, 2019).

**Substantive Due Process Right to be Free From Physical Restraint**

113.   In addition, and alleged herein as an independent basis, Petitioners have a fundamental right to be free from physical restraint. *R.I.L.-R. v. Johnson*, 80 F. Supp. 3d 164, 187-89 (D.D.C. 2015); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment Due Process] Clause protects.").

114.   Petitioners are physically restrained in the Imperial Beach Border Patrol Station.  Petitioners are subject to the difficult conditions of the CBP detention facility and are prohibited from leaving the facility, with no legal basis for their detention and no foreseeable end to it.

115.   For each of the above-alleged reasons, Respondents' conduct has and continues to violate Petitioners' Fifth Amendment right to be free from physical restraint.

116.   For each of the above-alleged reasons, Respondents have and continue to violate Petitioners' Fifth Amendment Procedural and Substantive Due Process rights.

## COUNT FIVE

### Respondents' Detention of Petitioners Is Arbitrary and Capricious, in Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

117.    Petitioners re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

118.    Respondents' decision to continue detaining Petitioners is arbitrary and capricious and must be set aside, pursuant to the Administrative Procedure Act ("APA").  Under the APA, a reviewing court may set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.*  The standard requires that the agency provide a satisfactory explanation of its decision, and a "rational connection between the facts found and the choice made" in order for the reviewing court to uphold the decision.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citation omitted).

119.    With respect to Petitioners, Respondents' decision to continue detaining them is "not in accordance with the law" because it violates the requirements of the *Flores* Agreement by detaining them for over seventy-two (72) hours and at a location that is neither safe nor sanitary.  Flores Settlement Agmt. ¶¶ 11-12.

120.    Respondents lack a rational basis to detain Petitioners.  There are no federal laws or statutes that allow the CBP to hold Petitioners in custody indefinitely.  *Zadvydas,* 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").  The CBP may not properly keep Petitioners in its custody without a legal basis to do so.

121.    The decision to keep Petitioners in custody is the agency's final action regarding her custody and therefore is subject to review under the APA.  *See* 5 U.S.C. §§ 551, 701, 702.  Devoid of a legal basis for Petitioners' detention, Respondents' decisions are arbitrary and capricious; no rational nexus between any agency or public interest and their detention can exist because they are neither a flight risk nor

danger to the community.  *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (citation omitted).  Respondents' decision to detain Petitioners indefinitely therefore should be set aside as arbitrary and capricious under the APA.  5 U.S.C. § 706(2)(A).

## COUNT SIX

**Respondents' Detention of Petitioners Violates the Administrative Procedure Act Because it Violates Petitioners' Due Process Rights, 5 U.S.C. § 706(2)(B)**

122.  Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

123.  The APA provides that courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).

124.  For each of the reasons alleged in Counts One, Two, and Three above, the Court should hold unlawful and set aside Respondents' continuing detention of Petitioners.  Specifically, Respondents' conduct has and continues to violate Petitioners' procedural and substantive Due Process rights.

## COUNT SEVEN
### Declaratory Relief, 28 U.S.C. §§ 2201, 2202

125.  Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

126.  This Court has jurisdiction and authority to issue a declaration of Petitioners' rights, and any such declaration shall have the force and effect of a final judgment or decree.  28 U.S.C. § 2201.

127.  In addition, this Court has jurisdiction and authority to issue any further necessary or proper relief based on a declaratory judgment or decree against any adverse party whose rights may be determined by such judgment, after reasonable notice and hearing.  28 U.S.C. § 2202.

128.  Petitioners accordingly seek a declaration that they have been wrongfully detained and are subject to release from CBP custody.

## COUNT EIGHT

### Writ of Habeas Corpus, 28 U.S.C. § 2241

129.   Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

130.   As set forth above, Respondents are currently holding Petitioners, in CBP custody in violation of federal statutes and regulations, a.S. Constitution.

131.   Petitioners thus seek release from detention by writ of habeas corpus pursuant to 28 U.S.C. § 2241.

### **PRAYER FOR RELIEF**

WHEREFORE, Petitioners respectfully prays the Court to:

1.     Grant Petitioners a writ of habeas corpus directing Respondents to release Petitioners within 48 hours in the United States and, pending release, provide Petitioners necessary immediate medical attention;

2.     Issue a declaration that Petitioners' ongoing detention violates/violated the INA, APA, and Due Process Clause of the Fifth Amendment

3.     Award Petitioners costs and expenses under the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and any other basis justified under law, to be proved by subsequent motion; and

4.     Remove Petitioners from Mexico and into the United States until this court can consider briefing on the merits of this matter; and

5.     Grant such further relief as the Court deems just and proper.

///

1   Dated:      March 9, 2020                    **Arent Fox LLP**

2

3                                                s/ *Sung Soo Yoon*

4                                                John S. Purcell
                                                 Tracy Luu-Varnes
5                                                Sung Soo Yoon

6                                                AL OTRO LADO, INC.

7

8                                                s/ *Erika D. Pinheiro*
                                                 Erika D. Pinheiro
9
                                                 Attorneys for Petitioners
10                                               Marta Carolina Barrientos Calel, J.V.C.B.
                                                 and A.S.D.J.Y.B.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION BY ATTORNEY ACTING ON PETITIONERS' BEHALF

## PURSUANT TO 28 U.S.C. § 2242

I am submitting this verification on behalf of the Petitioners because I am the Petitioners' attorney.  As Petitioners' attorney, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated:        March 9, 2020                              **ARENT FOX LLP**

Maya Ibars
COUNSEL OF RECORD FOR THE
PETITIONERS

## ATTESTATION OF AUTHORITY TO INCLUDE ELECTRONIC

## SIGNATURE

I hereby certify that the contents of this document and all attachments are acceptable to all persons whose electronic signatures appear on this document.  I hereby certify that am authorized by all signing parties to file this document and all attachments on their behalf.

Dated:        March 9, 2020            **ARENT FOX LLP**

By: */s/ Sung Soo Yoon*
John S. Purcell
Tracy Luu-Varnes
Sung Soo Yoon